UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

FORT HENRY MALL OWNER, LLC )
)
v. ) NO. 2:11-CV-287
)
U.S. BANK N.A., *ETC.*, *ET AL.* )

**MEMORANDUM AND ORDER**

**REGARDING DEFENDANTS' MOTIONS TO STRIKE JURY DEMAND, (DOCS. 29 AND 59).**

The plaintiff, Fort Henry Mall Owner, LLC, ("the owner") owns and operates a large shopping mall ("the property") in Kingsport, Tennessee. In 2007, the owner borrowed $44,600,000.00 from Merrill Lynch Mortgage Lending, Inc. ("Merrill Lynch") to purchase and operate the property. The promissory note evidencing the loan was secured by a single, lengthy instrument that included a deed of trust on the owner's real estate upon which Fort Henry Mall sits; an assignment of leases and rents regarding tenants of Fort Henry Mall; and a security agreement with respect to the owner's personalty and fixtures in or attached to the Fort Henry Mall building.

Ultimately, by virtue of successive assignments, the defendant U.S. Bank N.A. ("U.S. Bank") became the owner and holder of the note, security instrument, and all other documents regarding the original loan by Merrill Lynch to the owner.[1]

---

[1] The plaintiff-owner no longer disputes that U.S. Bank has become the successor in interest to Merrill Lynch with respect to the loan and all the loan instruments. In other words,

U.S. Bank retained Keycorp Real Estate Capital Markets, Inc. ("Keycorp") as its "master servicer."[2] Keycorp's responsibility was to "service the loan;" the primary component of that responsibility was collecting payments on the loan. CW Capital Asset Management, LLC ("CW") is the "special servicer," an entity who services are utilized when a loan is in default.

This lawsuit centers upon § 9.06 of the Security Instrument. With respect to the owner's real estate which is encumbered by the deed of trust, the owner and Merrill Lynch agreed to designate a portion of the unimproved real property as "Out Parcels." Under § 9.06, the owner and Merrill Lynch agreed that Merrill Lynch would release one or more of these designated Out Parcels if various conditions were met. According to the complaint, Out Parcels numbered 1-5 were released from the operation of the deed of trust some time ago. However, so the plaintiff owner alleges in its amended complaint, the current lender/secured party, U.S. Bank, has refused to release Out Parcel 6 from the deed of trust notwithstanding that the plaintiff is in compliance with its loan obligations and has fulfilled all the conditions listed within § 9.06 of the security instrument.[3]

---

U.S. Bank stands in the corporate shoes of Merrill Lynch. This issue is discussed in more detail later in this order.

[2]Defendant named Keybank USA, N.A. in its amended complaint as the master servicer. Attorney Leeth, who represents Keycorp, unequivocally asserted that the proper defendant is Keycorp, not Keybank. Attorney Leeth and plaintiff's counsel, Ms. Rice, agreed to informally consult and determine between themselves the identity of the proper defendant and, if necessary, submit a motion and an agreed order to the court.

[3]At the hearing, defendants stated that they contest plaintiff's assertion that it is in compliance. This, however, is far beyond the scope of the present motions to strike.

In its amended complaint, the plaintiff owner asserts fourteen causes of action, some against U.S. Bank, others against the Master Servicer and the Special Servicer, some against all three. Those causes of action include: an action to quiet title; an action for breach of contract against U.S. Bank, and another against the Master Servicer and Special Servicer; an action alleging breach of implied covenant of good faith and fair dealing filed against U.S. Bank; another cause of action for breach of the implied covenant of good faith and fair dealing against the Master Servicer and Special Servicer; an action requesting that all the defendants be ordered to specifically perform their agreements; an action seeking a judicial declaration that the various defendants are in breach of the contract, and the plaintiff is not; a request for injunctive relief; an action for negligence filed against the Special Servicer and Master Servicer; an action for negligent misrepresentation against the Master Servicer and Special Servicer; a common law action for tortious interference with contract/inducement to breach contract asserted against the Master Servicer and Special Servicer; a statutory action for tortious inducement to breach contract asserted against the Master Servicer and Special Servicer; an action against the Master Servicer and Special Servicer for tortious interference with the business relationship between plaintiff and the Lender (i.e., U.S. Bank); and an action against the Master Servicer and Special Servicer asserting tortious interference with the business relationship between plaintiff and its tenants.

These causes of actions are immeshed, overlapping, and interlocking. But the core or gravamen of the plaintiff's complaint, counsels' protestations to the contrary notwithstanding, is breach of contract: the plaintiff owner alleges that it requested that Out

3

Parcel No. 6 be released from the deed of trust; that the Master Servicer and Special Servicer insisted upon the fulfillment of conditions not required by the Security Instrument; that U.S. Bank acquiesced in those extra-contractual conditions; that U.S. Bank has refused to release Out Parcel No. 6; as a result of which U.S. Bank is in breach of its obligations under the Security Instrument.  All other causes of actions are incidental side-shows, as it were.

The immediate issue is the plaintiff/owner's demand for trial by jury.  The defendant U.S. Bank has filed a motion asserting that relevant loan documents contain provisions whereby the owner agreed to waive a jury in the event of litigation, Document 29.  Similarly, the defendant Keycorp has filed a motion to strike plaintiff's demand for a jury (Doc. 59).[4]

Section 18.08 of the Security Instrument reads as follows:

> Section 18.08.  <u>Waiver of Counterclaim, Etc</u>. BORROWER HEREBY WAIVES THE RIGHT TO ASSERT A COUNTERCLAIM, OTHER THAN A COMPULSORY COUNTERCLAIM, IN ANY ACTION OR PROCEEDING BROUGHT AGAINST IT BY LENDER OR ITS AGENTS, AND WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING BROUGHT BY EITHER PARTY HERETO AGAINST THE OTHER OR IN ANY COUNTERCLAIM BORROWER MAY BE PERMITTED TO ASSERT HEREUNDER OR WHICH MAY BE ASSERTED BY LENDER OR ITS AGENTS, AGAINST BORROWER, OR IN ANY MATTERS WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS SECURITY INSTRUMENT OR THE DEBT.

Substantially, if not precisely, identical language appears in Section 20 of an Assignment of Leases and Rents ("ALR") executed by the parties simultaneously with their execution of

---

[4]Oddly, the remaining defendant, CW, has not filed such a motion even though it is represented by the same attorneys who represent U.S. Bank.  After some discussion between the court and the attorney for U.S. Bank, it was agreed that CW should be added as a co-movant.

the Security Instrument:

> Section 20. <u>**TRIAL BY JURY.**</u> **ASSIGNOR HEREBY WAIVES THE RIGHT TO ASSERT A COUNTERCLAIM, OTHER THAN A COMPULSORY COUNTERCLAIM, IN ANY ACTION OR PROCEEDING BROUGHT AGAINST IT BY ASSIGNEE OR ITS AGENTS AND WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING INCLUDING, WITHOUT LIMITATION, ANY TORT ACTION, BROUGHT BY EITHER PARTY HERETO AGAINST THE OTHER OR IN ANY COUNTERCLAIM ASSIGNOR MAY BE PERMITTED TO ASSERT HEREUNDER OR WHICH MAY BE ASSERTED BY ASSIGNEE OR ITS AGENTS AGAINST ASSIGNOR OR IN ANY MATTERS WHATSOEVER, ARISING OUT OF OR IN ANY WAY CONNECTED WITH ASSIGNOR, THIS ASSIGNMENT, THE NOTES, THE SECURITY INSTRUMENT OR ANY OF THE OTHER LOAN DOCUMENTS.**

Bearing in mind that a right to trial by jury is the bedrock of both the English and American judicial systems, any waiver of the right to a jury trial must be unequivocal, and knowingly and voluntarily made. *K.M.C. Co., Inc. v. Irving Trust Co.*, 757 F.2d 752, 754 (6th Cir. 1985). Here, the burden is upon the plaintiff-owner to prove that its waiver of a jury trial was unknowing and involuntary. *Id.*, 756.

Section 18.08 of the Security Instrument and Section 20 of the ALR are reproduced in this order exactly as they appear in the respective documents. Section 18.08 of the Security Instrument is capitalized in its entirety, and is in rather stark contract to all the other sections or paragraphs. Section 20 of the ALR not only is written entirely in capital letters, it is typed in bold font for good measure. The conclusion is inescapable that the parties intended to emphasize each of these sections or provisions; nothing about them was obscure.

It is hard to imagine that the members or representatives of a Limited Liability

5

Case 2:11-cv-00287-JRG-MCLC   Document 74   Filed 02/15/12   Page 5 of 11   PageID #: 1544

Company who intend to buy and operate a shopping mall, and to borrow nearly Forty-Five Million Dollars to do so, would by anything less than astute and sophisticated business people, and plaintiff has not suggested otherwise. Moreover, paragraph 18.09 of the Security Agreement recites that the "borrower," i.e., the owner, was represented by competent counsel in connection with the negotiation and drafting of the Security Instrument and all other loan documents. Thus, if these two provisions indeed served to waive the owner's right to a jury trial, such waiver was knowing and voluntary.

The question of a knowing and voluntary waiver aside, the owner argues that the two provisions are ambiguous, and any ambiguity must be resolved against the enforcement of the waiver provisions in light of the preference for jury trials.

Paragraph 18.08 of the Security Instrument is one sentence which contains 88 words, and it addresses two separate matters: the owner's waiver of its right to file any non-compulsory counterclaim in the event the owner is sued by U.S. Bank, and plaintiff's waiver of its right to a jury trial in any suit arising out of the loan or under any of the loan instruments.

Section 20 of the ALR contains 103 words, again in a single sentence. Notwithstanding that it is titled "**TRIAL BY JURY**," it also addresses the same two separate subjects. The plaintiff-owner's attorney describes this as a run-on sentence, and it is certainly that. These two contractual provisions unfortunately are good examples of the frequent criticism leveled against the legal profession by those who value clarity of language.

A sentence is ambiguous if it itself is capable of two or more meanings (a patent

6

ambiguity), or if the sentence, unambiguous in and of itself, is made ambiguous in light of external circumstances (a latent ambiguity).[5] But difficulty of interpretation is not synonymous with an ambiguity; the fact that it took the author of this order several readings of the paragraphs, and his excision of inapplicable excess words, does not *ipso facto* make either paragraph ambiguous.

Section 18.08 of the Security Instrument, after striking the words applicable only to the waiver of counterclaims, reads as follows:

> Borrower hereby . . . waives trial by jury in any action . . . brought by either party hereto against the other . . . in any matters whatsoever arising of or in any way connected with this Security Instrument or the debt.

Similarly, Section 20 of the ALR, after removing those words relevant to the counterclaim issue, reads as follows:

> Assignor (i.e., the owner) . . . waives trial by jury in any action . . . brought by either party hereto against the other . . . in any matters whatsoever, arising out of or in any way connected with assignor, this assignment, the notes, the security instrument or any of the other loan documents.

These two provisions waive the owner's right to a jury trial with respect to any litigation that arises out of, or which is connected to, the Security Instrument or the

---

[5] The law in this regard is the same in both New York and Tennessee: *Coble Systems, Inc. v. Gifford Co.*, 627 S.W.2d 359 (Tenn. Apps. 1981); *in re: Milliette's Estate* 206 N.Y.S. 342 (NY Sur. 1924).

underlying indebtedness.

The plaintiff-owner next argues that several of its asserted causes of actions are independent of the indebtedness, the security instrument, and other loan documents, and therefore the waiver provisions do not encompass those causes of action. Assuming for the immediate purposes of these motions that those causes of action are viable, the fact remains that they "arose out of" the contracts between the plaintiff owner and U.S. Bank By the same token, each of the causes of action asserted by the plaintiff owner are, *in some way*, "connected with [the] Security Instrument or the debt." Each cause of action, whether it sounds in tort or contract, alleges an act – or a failure to act – by one of the defendants that in some fashion was related to the indebtedness and the loan documents. *But for* the loan and the loan documents, none of the acts, or failures to act, would have come to pass. In short, the facts upon which plaintiff relies in each of its causes of action arose out of, and are connected to, the loan and Security Instrument.

Plaintiff also asserts that the three defendants were not signatories to either the Security Instrument or ALR. Regarding defendant U.S. Bank, since the briefing regarding its motion to strike, plaintiff has become satisfied that it is the successor in interest to Merrill Lynch. It is true the relevant language in both the Security Instrument and the ALR regarding the waiver issue refers to actions "brought by either party hereto..." However, clearly the rights of Merrill Lynch were assignable. Section 1.01 of the Security Instrument defines "Lender" as "the Lender named herein (Merrill Lynch) and its successors or assigns." Section 17.01 gives Merrill Lynch "the right to assign this Security Instrument and/or any

8

of the Loan Documents...to any person;..." It is obvious that U.S. Bank now has all of the rights of Merrill Lynch under the Security Instrument and the ALR, including the right to enforce the jury waiver provisions in these documents.

Keybank and CW, as Master Servicer and Special Servicer, are admittedly in a more attenuated posture than U.S. Bank. However, their functions and roles in this transaction were functions and roles clearly ascribed to the original signatory, Merrill Lynch. Plaintiff, who *did* execute the Security Agreement and ALR, knew full well that someone would exercise these powers. Nevertheless, plaintiff asserts that Keycorp and CW are not entitled to the benefits of the jury waiver provision originally inuring to Merrill Lynch, and rely upon two district court cases from the Eastern District of Pennsylvania, *Quinn Construction, Inc. V. Skanska USA Building, Inc., et al*, 2010 WL 4909587 (E.D. Pa. 2010), and *Brown & Brown, Inc. v. Cola*, 2011 WL 4380445 (E.D. Pa. 2011). These cases are factually inapposite to the present case; the parties attempting to enforce the jury waiver provisions were either "strangers" to the agreements in which the waivers were contained, or the causes of action bore no relation to the subject matter of the agreements. Once again, in the present case, *all* of the acts complained of, whether couched in contract or tort, arose out the defendants' action, or inaction, in abiding by the terms of the loan documents which contained the waiver provisions. Unlike in *Quinn* and *Brown & Brown,* there was a "clear and identifiable stopping point" regarding what non-signatories could invoke the jury waiver clause. *Quinn, supra,* p. 6. In this case, Keycorp and CW are sued for same "transgressions" for which Merrill Lynch would have been sued had it done what they allegedly did, and for which it would clearly have had the right to invoke the jury waiver clause. The waiver provisions

9

Case 2:11-cv-00287-JRG-MCLC   Document 74   Filed 02/15/12   Page 9 of 11   PageID #: 1548

inure to the benefit of Keycorp and CW.

Lastly, plaintiff asks that the court impanel an advisory jury pursuant to F.R.Civ.P. 39(c).

It is clear from the word "may" in the rule that the determination of whether to utilize an advisory jury is a matter within the discretion of the district judge.

A trial using an advisory jury has all the disadvantages of a normal jury trial: it slows the trial; it is expensive; it requires mid-trial evidentiary rulings that probably would be pretermitted in a bench trial; and, in this case, preparing jury instructions will entail hours upon hours of precious judicial time.

On the other hand, an advisory jury has none of the advantages of a normal jury – an advisory jury of course merely "advises" and nothing more; the district judge remains the fact-finder.

This will be an extremely complicated case to try, and it will be made exponentially more so by the utilization of an advisory jury. The *raison d'etre* of an advisory jury is to assist the district judge. Empaneling an advisory jury in this case not only will be of no assistance to the judge, it will complicate his job considerably.

The motions to strike plaintiff's demand for trial by jury, (Docs. 29 and 59), are GRANTED. This ruling applies to the defendant CW Capital Asset Management, LLC, notwithstanding that it did not file a written motion to strike plaintiff's jury demand.

Plaintiff's request for the empaneling of an advisory jury is DENIED.

In conclusion, this case will be tried by the district judge without a jury.

SO ORDERED:

s/ Dennis H. Inman
United States Magistrate Judge